**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSHUA CURRY,** on behalf of himself and all others similarly situated**,** | **CIVIL ACTION** |
| Plaintiff, | NO. |
| **vs.** | **CLASS AND COLLECTIVE ACTION** |
| **BOSTIK, INC**. and **ARKEMA INC.,** | **JURY DEMANDED** |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff, Joshua Curry, individually, and on behalf of all persons similarly situated, files this Collective and Class Action Complaint ("Complaint"), against Defendants, Bostik, Inc. ("Bostik") and Arkema Inc. ("Arkema") (hereinafter "Defendants"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Kentucky Wages and Hours Act, Kentucky Revised Statutes § 337, *et seq.* ("KWHA").

Plaintiff asserts his FLSA claims as a collective action under FLSA, 29 U.S.C. § 216(b), and asserts his state law KWHA claims as a class action under Fed. R. Civ. P. 23. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## INTRODUCTION

1.    Plaintiff brings this class and collective action on behalf of himself and other similarly situated individuals who have worked for Defendants as non-exempt hourly employees to challenge Defendants' unlawful policies and practices of failing to pay Plaintiff and Collective

and Class members for "off-the-clock" work and failure to pay all overtime in violation of the FLSA and the KWHA.

2.　　Bostik, which is wholly owned by Arkema, manufactures adhesive and sealant technologies for use in a wide range of industrial sectors including construction, automotive, aerospace, rail, packaging and home improvements.

3.　　Bostik maintains multiple manufacturing plants in the United States including an approximately 20,000 square feet facility located in Louisville, Kentucky (the "Louisville Plant"). The Louisville Plant manufactures over 200 adhesive products and employs a staff of approximately 50 to 100 technicians in the Plant's production and warehousing areas. Bostik's manufacturing requires various mixing, blending, and packaging processes, which exposes employees to harsh chemicals, toxic fumes and temperatures of approximately 500 degrees Fahrenheit. Employees involved, or exposed to, these manufacturing processes are required to comply with Occupational Health and Safety Administration ("OSHA") standards, Environmental Protection Agency ("EPA") guidelines and Bostik-specific Environmental Health and Safety (EHS) and Quality procedures. Bostik's Louisville Plant operates three shifts daily.

4.　　Every employee involved in Bostik's manufacturing process, including those responsible for operating the mixing, blending and packaging machines, equipment maintenance, and shipping and receiving, are required to wear specialized personal protective equipment ("PPE") in the designated production and warehouse areas at all times while they are on duty.

5.　　Defendants operate as joint employers of Plaintiff and all similarly-situated employees who worked at the Louisville Plant, and Defendants' policies and practices deprived Plaintiff and similarly situated employees of all pay that they were and are entitled to by law.

6.      On information and belief, Defendants have systematically and willfully failed to comply with the requirements of FLSA and KWHA in multiple ways.

7.      First, Defendants have required Plaintiff and similarly situated non-exempt employees to engage in off-the-clock work without paying them for the time they spent performing such work.

8.      Defendants instructed Plaintiff Curry, as well as other similarly situated non-exempt employees, that they were required to don their specialized PPE prior to the time that their scheduled shift started. Plaintiff and other employees were instructed that the time expended donning their PPE was required to be completed off-the-clock.

9.      Second, Defendants also require employees to attend pre-shift turnover meetings, which occur prior to the beginning of their shifts. Despite requiring Plaintiff and similarly situated non-exempt employees to attend these meetings, Defendants would only begin paying Plaintiff and other Class and Collective members for work at the scheduled beginning of their shifts (*i.e.*, when they clocked in).

10.     Third, while Bostik requires its technician employees to work 10 to 12 hour shifts, it fails to allow employees to take scheduled rest breaks or bona fide meal breaks, as required by 29 C.F.R. §785.19 and KRS § 337.355.

11.     As a result, Plaintiff and similarly situated employees were denied minimum wages and/or overtime wages in violation of the FLSA and the KWHA.

12.     Plaintiff is similarly situated in all material respects to Defendants' other current and former non-exempt employees who were required to complete these work-related tasks without receiving any compensation whatsoever.

13. Defendants' illegal pay practices were systematically applied to workers at the Louisville Plant, in violation of the FLSA and the KWHA. Defendants should pay the wages illegally withheld from its employees plus statutory liquidated damages.

## JURISDICTION AND VENUE

14. This Court has federal question jurisdiction over all claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

15. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact as Plaintiff's claims under the FLSA.

16. This Court has personal jurisdiction over Defendant Bostik since it is registered to conduct business in this Commonwealth, regularly conducts business in Pennsylvania, and has sufficient contacts in Pennsylvania.

17. This Court has personal jurisdiction over Defendant Arkema, Inc. since it is Pennsylvania corporation registered to conduct business in this Commonwealth, regularly conducts business in Pennsylvania, and has sufficient contacts in Pennsylvania

18. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District and pursuant to the forum selection clause between the parties providing:

> Any litigation of a dispute concerning this Agreement may only occur in the Montgomery County, Pennsylvania Court of Common Pleas, or the United States District Court for the Eastern District of Pennsylvania.

## THE PARTIES

19. Plaintiff, Joshua Curry, is an adult individual currently residing in Louisville, Kentucky. Since January 31, 2022, Plaintiff Curry has been employed as a Maintenance Mechanic

at the Louisville Plant, located at 7401 Intermodal Drive, Louisville, KY 40258. Plaintiff Curry's written consent to participate in this action is attached to this Complaint as Exhibit "A."

20.     Defendant, Bostik Inc., is a foreign registered corporation with a principal place of business within this Commonwealth at 900 First Avenue, King of Prussia, PA 19406, and is amenable to service by Corporation Service Company, 421 West Main Street, Frankfort, KY 40601.

21.     Defendant, Arkema Inc., is a Pennsylvania corporation with a principal place of business within this Commonwealth at 900 First Avenue, King of Prussia, PA 19406.

22.     Arkema S.A. is a specialty chemicals and advanced materials company headquartered in Colombes, France. Arkema S.A.'s affiliates operating in the U.S. include Bostik and Arkema Inc. at 43 sites, including 37 manufacturing facilities, and employs 3,600 people in the U.S.

23.     Since 2015, Bostik Inc., has been wholly owned by Arkema S.A. and its employment policies and procedures, described below, are uniformly established and directed by Arkema.

24.     Since 2015, Bostik has operated as an Arkema subsidiary with shared executives, financing, employment policies and facilities.

25.     The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with Defendants' authorization.

26.     At all times relevant to this lawsuit, Defendants have been an "enterprise engaged in commerce" as defined by the FLSA.

27.     Defendants employed Plaintiff and continue to employ similarly situated employees, as defined by the FLSA, 29 U.S.C. § 203(d). *See also* 29 C.F.R. 791.2(a).

28.     At all times relevant to this lawsuit, Defendants have been "Employers" as defined by the FLSA and the KWHA.

29.     At all times relevant to this lawsuit, Plaintiff was Defendants' employee and was covered by the FLSA and KWHA.

30.     Defendants have been engaged in commerce or in the production of goods for commerce as defined by the FLSA, and Defendants' employees are engaged in interstate commerce and handle or work on goods that have been moved in and/or produced in commerce, as described by 29 U.S.C. §§ 206-207.

31.     Defendants' annual gross sales exceed $500,000.

32.     The proposed Collective Action Members pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq*., are all current and former non-exempt employees who worked at Defendants' Louisville Plant at any time within the three years prior to the date of filing of this Complaint through the date of the final disposition of this action, who were denied regular or overtime wages in connection with Defendants' policy or practice of requiring mandatory off-the-clock work.

33.     The proposed Class Action Members pursuant to the KWHA are all current and former non-exempt employees who worked at Defendants' Louisville Plant at any time within the five years prior to the date of filing of this Complaint through the date of the final disposition of this action who were denied regular or overtime wages in connection with Bostik's policy or practice of requiring mandatory off-the-clock work.

34.     Plaintiff seeks to represent both the Collective Action Members and the Class Action Members for damages due to unpaid regular and overtime wages pursuant to the FLSA and the KWHA.

## COLLECTIVE AND CLASS DEFINITIONS

35.     Plaintiff brings Count I of this lawsuit as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of himself and the following proposed collective:

> All current and former non-exempt employees who worked in the production areas at the Louisville Plant and were required to wear PPE, and who were Defendants' employee between the three years prior to the filing of this Complaint and the present (the "FLSA Collective").

36.     Plaintiff brings Count II of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All current and former non-exempt employees who worked in the production areas at the Louisville Plant and were required to wear PPE and who were Defendants' employee between the five years prior to the filing of this Complaint and the present (the "Kentucky Class").

## FACTUAL ALLEGATIONS

37.     Defendants own and operate the Louisville Plant in Kentucky.

38.     Each of the Defendants are Plaintiff's joint employers, along with all other similarly-situated non-exempt employees in that Defendants jointly control and direct the employment policies and practices, including the illegal pay practices. Defendant Arkema contracted Plaintiff's employment and provides payroll for all employees.

39.     In order to manufacture its adhesive products, Defendants employ several types of technical employees, including maintenance mechanics, production operators, and materials handlers who are required to wear Bostik-prescribed PPE while working in the production and/or

warehouse areas of the Louisville Plant. Defendants specifically require all employees to wear all necessary PPE where designated.

40.    Plaintiff, the proposed FLSA Collective, and Kentucky Class action members are hourly-paid, non-exempt, employees who provide Defendants' on-site production, maintenance and repairs and normally work in excess of forty (40) hours per week.

41.    Maintenance mechanics perform routine maintenance, pipe fitting, light electrical, troubleshooting and general maintenance and repair work. Maintenance mechanics are required to wear PPE, including a respirator, while performing maintenance in the production areas.

42.    Production operators run all equipment such as pressure vessels, mixers, blenders, extruders, coaters and fork trucks and material handling equipment. Production operators are required wear PPE and a respirator at all times while working.

43.    Materials handlers are responsible for unloading raw material and incidentals, loading finished products into tank cars, tank trucks, ISO tanks and other packages as required for filling orders. Materials handlers operate fork trucks and material handling equipment. Materials handlers are required wear PPE, including a respirator, at all times while working in the production area.

44.    In order to prepare for each shift, employees who work in the production area of the Louisville Plant are required to don specialized personal protective gear and clothing including safety glasses, hearing protection, voltage rated gloves with leather protectors for use while working with high-voltage, cut resistant gloves and/or heat resistant gloves for working with machinery, a Bostik-prescribed uniform consisting of a long-sleeve shirt and pants or coveralls, face shield, hard-hat, steel-toed boots and a respirator. Bostik provides technician employees with

uniforms for use while on the job, and employees are not allowed to remove the uniforms from the premises. Bostik also pays the cost of laundering and replacing employees' uniforms.

45.     Specifically, Bostik's Employee Handbook provides that "Uniforms are for use while on the job, and [employees] are not allowed to remove them from the premises."

46.     The PPE also represents a critical part of the production process in that the PPE that employees wear also prevents contamination of Bostik's products.

47.     After donning their specialized PPE, employees are required to attend a pre-shift meeting, during which time issues such as production schedules, special projects and repairs are discussed.

48.     Because dressing in PPE and attending the pre-shift meeting is mandatory, Plaintiff and other similarly situated hourly-paid employees are entitled to be paid for all time spent completing such mandatory tasks.

49.     At the completion of each employees' shift, Plaintiff and other similarly situated hourly-paid employees are required to expend time removing and storing their PPE.

50.     However, Plaintiff and other similarly situated employees are or were required to complete these tasks without clocking in or otherwise reporting the time they spend or spent on these tasks.

51.     Plaintiff's supervisors instructed him to don his PPE and attend the pre-shift meeting before clocking-in and such time expended was "off-the-clock."

52.     In addition to the foregoing, Bostik regularly requires its non-exempt employees to work shifts of 10 to 12 hours without permitting the employee to take scheduled breaks or bona fide meal breaks, as required by 29 C.F.R. §785.19 and KRS § 337.355. *See also Bostik Job Description*, attached as Exhibit "B."

53.     Upon information and belief, Defendants have knowledge of all the off-the-clock work performed as alleged herein.

54.     As a result, hourly-paid non-exempt employees, including Plaintiff and the proposed Collective and/or Class Action Members, did not receive the appropriate regular wage and/or overtime wage compensation for all time expended when they completed mandatory off-the-clock work.

55.     This failure to pay Plaintiff and other similarly situated non-exempt employees for off-the-clock time was willful, intentional, and the result of design rather than mistake or inadvertence. Defendants were aware that the FLSA and the KWHA applied to their non-exempt employees.

56.     Defendants have acted willfully and with reckless disregard of clearly applicable FLSA and KWHA provisions by failing to compensate Plaintiff and other similarly situated non-exempt employees for all hours worked in excess of forty (40) during the workweek.

## COLLECTIVE ACTION ALLEGATIONS

57.     Plaintiff incorporates all the preceding paragraphs by reference as if fully set forth herein.

58.     Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

59.     Plaintiff desires to pursue this FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

60.     Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to the Defendants' previously described common pay and timekeeping practices and, as a result of such practices,

were not paid the full and legally mandated minimum wage for non-overtime hours and overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

61.     The FLSA Collective Members have the same or closely similar job duties as the Plaintiff, and all Plaintiff and Collective Members were paid by Defendants in the same manner, in violation of the FLSA. Accordingly, the named Plaintiff is similarly situated to all FLSA Collective Members.

62.     Plaintiff and the FLSA Collective performed the same type of work, the manner and terms of which were controlled by Defendants, and were not paid for all time worked or at the proper overtime rate as required by federal law.

63.     The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records.

64.     These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff incorporates all the preceding paragraphs by reference as if fully set forth herein.

66.     Plaintiff bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Kentucky Class defined above.

67.     The members of the Kentucky Class are so numerous that joinder of all members

is impracticable.

68.     Defendants have engaged in the same conduct towards Plaintiff and the other members of the Kentucky Class.

69.     The injuries and damages to the Kentucky Class present questions of law and fact that are common to each class member within the Kentucky Class, and that are common to the Kentucky Class as a whole.

70.     Plaintiff will fairly and adequately represent and protect the interests of the Kentucky Class, and all of its proposed class members because there is no conflict between the claims of Plaintiff and those of the Kentucky Class, and Plaintiff's claims are typical of the claims of the Kentucky Class.

71.     Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

72.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Kentucky Class predominate over any questions affecting only individual Class members including, without limitation: (1) whether Defendants paid them for all time worked; (2) whether Defendants failed to pay them the full amount of overtime compensation earned; and (3) whether Defendants failed to provide required meal breaks and rest breaks and whether members of the Kentucky class are entitled to additional compensation therefor.

73.     Plaintiff's claims are typical of the claims of the Kentucky Class in the following ways, without limitation: (a) Plaintiff is a member of the Kentucky Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Kentucky Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Kentucky Class and involve similar factual circumstances; (d) there are no conflicts

between the interests of Plaintiff and the Kentucky Class members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Kentucky Class members.

74.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

75.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

76.     The Kentucky Class is readily identifiable from Defendants' own employment records.

77.     Prosecution of separate actions by individual members of the Kentucky Class would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

78.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Kentucky Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

79.     Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff and the Kentucky Class. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## Violation of the FLSA
## (On Behalf of Plaintiff and the FLSA Collective Against All Defendants)

80.     Plaintiff incorporates all the preceding paragraphs by reference as if fully set forth herein.

81.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

82.     Defendants are subject to the wage requirements of the FLSA because Defendants are "employers" under 29 U.S.C. § 203(d).

83.     At all relevant times, Defendants were, and continue to be, "employers" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

84.     Alternatively, Defendants are subject to the wage requirements of the FLSA because the Defendants are joint employers pursuant to the FLSA.

85.     During all relevant times, the members of FLSA Collective, including Plaintiff, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

86.     Plaintiff and the FLSA Collective are not exempt from the requirements of the FLSA.

87.     Plaintiff and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek.

88.     Defendants' compensation scheme applicable to Plaintiff and the FLSA Collective failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

89.     Defendants knowingly failed to compensate Plaintiff and the FLSA Collective members at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week.

90.     Defendants also failed to create, keep and preserve records with respect to work performed by Plaintiff and the FLSA Collectives sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

91.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

92.     Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay employees' wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT II**
**Violation of the Kentucky Wage Payment and Collection Act**
**(On Behalf of Plaintiff and the Kentucky Class Against All Defendants)**

93.     Plaintiff incorporates all the preceding paragraphs by reference as if fully set forth herein.

94.     Plaintiff brings this claim on behalf of all members of the proposed Kentucky Class.

95.     Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. *See* KRS §§ 337.275, *et seq.*

96.     The KWHA § 337.285 requires that employees receive overtime compensation "not less than one and one-half (1-1/2) times" the employee's regular rate of pay for all hours worked over forty in one workweek. *See also* 803 Ky. Admin. Regs. 1:060.

97.     During all times material to this complaint, Defendants are covered employers required to comply with KRS § 337.010(1)(d).

98.     During all times material to this complaint Plaintiff and the Kentucky Class were covered employees entitled to the protections of the KWHA. *See* KRS § 337.010(1)(e).

99.     Plaintiff and the Kentucky Class are not exempt from receiving the KWHA's overtime benefits because they do not fall within any of the exemptions set forth therein. *See* KRS § 337.285(2).

100.    Defendants have violated the KWHA with respect to Plaintiff and the Kentucky Class by, *inter alia*, failing to compensate them for all hours worked at their normal hourly rate (for time worked under forty hours per week) and at one and one-half their "regular rate" for all hours worked in a workweek in excess of forty hours.

101.    In addition, the KWHA provides that employees are entitled to a reasonable meal break, which must occur sometime before the third hour of work or after the fifth hour of work. The KWHA also requires that employees receive a paid ten-minute rest break for each four-hour period they work. These breaks are in addition to the required meal break.

102.    Defendants have regularly required its employees to work long shifts, in excess of 8 hours per day and have failed to provide its employees with the required breaks.

103.    In violating the KWHA, Defendants have acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

104.    Pursuant to KRS § 337.385, Defendants, because it failed to pay employees the required wages and overtime at the statutory rate, must reimburse the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages.

105.     Pursuant to KRS § 337.385, Plaintiff and the Kentucky Class are entitled to reimbursement of the litigation costs and attorney's fees expended if they are successful in prosecuting an action for unpaid wages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief on behalf of himself and all others similarly situated:

a.     An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.     An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Kentucky Class;

c.     Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

d.     Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

e.     Liquidated damages to the fullest extent permitted under the law;

f.     Punitive damages as permitted under the law;

g.     Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

h.     Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues of fact.

Dated: June 20, 2022                          Respectfully submitted,

                                                  EDELSON LECHTZIN LLP

                                    By: /s/_____
                                              Eric Lechtzin (PA ID 62096)
                                              Liberato P. Verderame (PA ID 80279)
                                                Shoshana Savett (PA ID 91601)
                                              411 S. State Street
                                              Suite N-300
                                              Newtown, PA 18940
                                              Telephone: (215) 867-2399
                                              elechtzin@edelson-law.com
                                              lverderame@edelson-law.com
                                              ssavett@edelson-law.com

                                              *Attorneys for Plaintiff and the Proposed*
                                              *Collective and Class*