# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | |
|---|---|
| **JOSHUA CURRY,** on behalf of himself and all others similarly situated**,** | **CIVIL ACTION** |
| Plaintiff, | NO. 3:22-cv-00370-DJH |
| **vs.** | CLASS AND COLLECTIVE ACTION |
| **BOSTIK, INC**. | JURY DEMANDED |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS UNOPPOSED MOTION TO PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT, CERTIFY THE SETTLEMENT CLASS, AUTHORIZE CLASS NOTICE, AND <u>SCHEDULE A FINAL APPROVAL HEARING</u>**

## I.    **Preliminary Statement**

Plaintiff Joshua Curry ("Plaintiff"), individually and on behalf of all other similarly situated individuals, by and through his undersigned attorneys and with the consent, for settlement purposes only, of Defendant Bostik Inc. ("Bostik" or "Defendant"), submits this Memorandum of Law in Support of his Unopposed Motion to Preliminarily Approve the Settlement Agreement, Certify the Settlement Class, Authorize Class Notice and Schedule a Final Approval Hearing ("Motion").[1]

The proposed Settlement Agreement in this case is the product of extensive, arms-length settlement negotiations. As a result, the parties have agreed to resolve the Collective and Class claims for a gross Settlement Amount of $175,000. This Amount represents approximately 80% of the maximum statutory damages the Collective and Class would have recovered on its strongest claims had the case gone to trial, which is an excellent result given the inherent risks and expenses related to continued litigation. The Settlement Agreement executed by the parties is attached to the Declaration of Eric Lechtzin ("Lechtzin Decl.") as **Exhibit A**.

As set forth in detail below, Plaintiff respectfully requests that the Court review and approve the terms of the proposed Settlement as fair and reasonable, and certify the Settlement Class as both a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and as a class action under Fed. R. Civ. P. 23 for Plaintiff's claims under the Kentucky Wages and Hours Act, Kentucky Revised Statutes § 337, *et seq*. ("KWHA"), and schedule a hearing for Final Settlement Approval.

Plaintiff also submits a proposed Settlement Notice to be mailed or delivered to each potential Settlement Class Member, informing them of the terms of the Settlement Agreement,

---

[1] Plaintiffs adopt the definitions of terms as listed in the "Definitions" section of the Settlement Agreement. *See* Lechtzin Decl., **Exhibit A** at ¶ 24.

advising them of his rights under the proposed Settlement, and giving them an opportunity to be heard in the proceedings for the Final Settlement Approval. *See* Lechtzin Decl. **Exhibit B**.

## II.    <u>Factual Background</u>

This is a lawsuit brought under the FLSA and the KWHA arising from Defendant Bostik's alleged failure to properly compensate Plaintiff and Collective and Class members for "off-the-clock" work and alleged failure to pay all overtime in violation of the FLSA and the KWHA. Plaintiff filed his Complaint on June 21, 2022, as a collective action under Section 16(b) of the FLSA and a class action under Fed. R. Civ. P. 23 for alleged violations of the KWHA on behalf of a Collective and a Class of persons who are current and former Bostik technician employees.[2]

Plaintiff alleges he and the Collective and Class were required to expend pre-shift and post-shift time on a daily basis donning and doffing their required personal protective equipment ("PPE") and uniforms and attending a daily pre-shift safety meeting without being compensated for their time. Defendant Bostik denies Plaintiff's allegations and asserts multiple affirmative defenses, including that Plaintiff failed to state a cause of action, which would preclude recovery under the FLSA or the KWHA.

Bostik operates an approximately 20,000 square feet facility located in Louisville, Kentucky (the "Louisville Plant"). The Louisville Plant manufactures over 200 adhesive products and employs a staff of approximately 50 technicians in the Plant's production and warehousing areas. Bostik's manufacturing requires various mixing, blending, and packaging processes, which exposes employees to harsh chemicals, toxic fumes and temperatures of approximately 500 degrees Fahrenheit. Employees involved in, or exposed to, these manufacturing processes are

---

[2] This Collective and Class constitutes Production Operators, Maintenance Mechanics and Shipping & Receiving Materials Handlers (Warehouse and Forklift employees) who required to wear specialized personal protective equipment ("PPE") in the designated production and warehouse areas at all times while they are on duty. *See Compl.* at ¶¶ 4, 41-43.

required to comply with Occupational Health and Safety Administration ("OSHA") standards, Environmental Protection Agency ("EPA") guidelines and Bostik-specific Environmental Health and Safety (EHS) and Quality procedures. Bostik's Louisville Plant operates three shifts daily. *See Complaint*, filed 06/21/22, Doc #1, at ¶ 3. *See also* Bostik's *Answer*, Dkt. 27, response to ¶ 3.

The Collective and Class members are Bostik's current and former non-exempt employees who work or worked in the Louisville Plant's production areas. Plaintiff Curry was hired as a non-exempt Maintenance Mechanic at the Louisville Plant and began working on January 21, 2022. *Compl*. ¶ 19; *Defendant's Answer*, Dkt. 27, ¶¶ 19, 99.[3]

The Collective and Class members are similarly situated in that, pursuant to company policy, all are required to wear the same essential PPE and are required to attend a daily pre-shift safety meeting. *Id. at* ¶ 39. *See also Bostik's Answer*, at ¶ 4 (admitting that employees in the mixing, blending, packaging machines, equipment maintenance, and shipping and receiving are required to PPE while performing work.) Bostik's Employee Handbook provides:

> All employees, including visitors are required to wear necessary PPE where designated. If you're in a production or maintenance-related role, Bostik provides you with an adequate supply of uniforms. . . . Uniforms are for use while on the job, and you're not allowed to remove them from the premises. We pay the cost of laundering and replacement of your uniforms. Because you represent Bostik in the eyes of our customers and facility visitors, you're expected to keep your uniform or lab coat as clean as possible and in good repair at all times.
>
> Throughout our facilities, a variety of PPE is required, such as safety shoes, lab coat, gloves, hard hats, safety glasses, etc. Many of these items are provided at the facility.

*See Bostik Handbook* at 27, attached as Exhibit "C" to Lechtzin Decl.

Thus, each member of the Collective and Class are required to wear, at a minimum, an employer-prescribed uniform, a hard hat, protective glasses, protective gloves, and steel-toed

---

[3] Additionally, in its Answer, Bostik admits that Plaintiff was required to don his PPE prior to his shift start time and attend the pre-shift safety meetings. *Id. at* ¶¶ 8 – 9.

shoes. Bostik's employee handbook does not allow employees to remove their PPE from the premises.[4] In addition, while working in the production and warehouse areas, all employees are required to wear a respirator.[5] *See Compl*. ¶ 44. The PPE also represents a critical part of the production process in that the PPE that employees wear also prevents contamination of Bostik's products. *Id. at* ¶ 46.

After donning their PPE, employees are required to attend a pre-shift meeting, during which time issues such as production schedules, special projects and repairs are discussed. However, Plaintiff's supervisors instructed him to don his PPE and attend the pre-shift meeting before clocking-in and such time expended was "off-the-clock." *Compl.* ¶ 8. Despite requiring Plaintiff and similarly situated non-exempt employees to dress in his PPE and attend these meetings, Defendant would only begin paying Plaintiff and other similarly situated technicians for work at the scheduled beginning of his shifts.

Bostik's Employee Handbook provides:

If you're a non-exempt employee, you're expected to keep accurate records of your work hours, using the time-keeping system at your facility. All Bostik facilities use a time clock. If you're an hourly employee, you must punch in so that you are ready to begin your work at your scheduled starting time and punch out at or after your scheduled dismissal time. Any deviations require prior approval from your direct leader. Accurate time reporting is essential. Talk to your direct leader for more information.

Exhibit "C" at 18.

Accordingly, Plaintiff, and those similarly situated employees are entitled to be paid for time expended donning and doffing his PPE. Additionally, once having donned his PPE, Plaintiff, along with his co-workers are "working" and entitled to payment for all time spent waiting until

---

[4] See Handbook, supra, providing "Uniforms are for use while on the job, and [employees] are not allowed to remove them from the premises."

[5] In addition to job-related requirements, employees were required to wear masks or respirators as part of the COVID requirements.

his official shift start time, even though they may be sitting in the break room waiting for the pre-shift meeting. Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as was the original Plaintiff. *See, e.g*., *Clark v. A&L Home Care and Training Center, LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023); *Pierce v. Wyndam Resorts, Inc*., 922 F.3d 741, 745-46 (6th Cir. 2019). Thus, the conduct alleged constitutes violations of the FLSA's requirements under 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112 and the KWHA at § 337.285 and 803 Ky. Admin. Regs. 1:060, both of which require that employees receive overtime compensation "not less than one and one-half (1-1/2) times" the employee's regular rate of pay for all hours worked over forty in one workweek. *See also* Compl. at ¶¶ 81-89; 94-103.

According to 29 C.F.R. § 790.6(b) "[i]f an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his "workday" commences at the time he reports there for work in accordance with the employer's requirement, even though through a cause beyond the employee's control, he is not able to commence performance of his productive activities until a later time." *See also Franklin v. Kellogg Co*., 619 F.3d 604, 620 (6th Cir. 2010) ("under the continuous workday rule, [plaintiff] may be entitled to payment for her post-donning and pre-donning walking time.")

In early 2023 the parties engaged in discovery. Plaintiff Curry provided responses to Defendant's interrogatories and produced documents in response to Defendant's requests for production. Likewise, Defendant provided its initial responses to Plaintiff's interrogatories and produced documents, including Plaintiff's hire packet, weekly time reports, W-2 information, payroll reports for other mechanic employees during the collective period, job description, training

materials, and its employee handbook. Plaintiff appeared for his deposition on January 25, 2023.

In addition, the Parties engaged in additional telephone conferences and exchanged multiple emails in order to obtain other employees' data upon which Plaintiff could rely in modelling his damage estimates. Through Defendant's willingness to provide relevant information, Plaintiff was able to discern the size of the Class as well as Defendant's potential liability exposure. This data and information were sufficient to facilitate informed settlement discussions among the parties.

Plaintiff filed his Motion for Conditional Certification and to Facilitate Collective Action Notice of the FLSA Collective on January 30, 2023, which is currently pending. *See* Dkt. No. 35. Plaintiff submits that the Court should grant this Motion for the purposes of settlement in order to give notice to similarly situated current and former employees.

### III. <u>Settlement Negotiations</u>

The Court ordered the parties to participate in a Confidential Settlement Conference conducted by Magistrate Judge Colin H. Lindsay. *See* Dkt. No. 43. The Conference occurred on Monday, November 6, 2023.

Plaintiff considered several factors in this settlement. First, the data Defendant provided indicated that there were between 35 and 40 current and former employees who met the definition of the Collective and the Class. Plaintiff understood that the Class Period covers the onset of Covid-19, and Defendant's business, like others in Kentucky, was negatively impacted by the pandemic. This resulted in a smaller Class than may have existed otherwise.

Second, not all putative Collective and Class Members worked overtime hours. Defendant's data also demonstrated that several current or former employees worked few overtime

hours. Nor did all putative Collective and Class Members remain employed for the entire class period.

Third, Plaintiff recognizes the difficulties in proving off-the-clock hours worked. Plaintiff also recognizes that the nature, amount, and reasons for off-the-clock work could vary significantly among Class Members, creating additional hurdles for collective and class certification.

Fourth, while Plaintiff believes he has a strong argument for class certification because all putative Class Members were required to wear the same essential PPE and required to attend a daily pre-shift safety meeting, he recognizes that the variety of tasks to which Class Members were assigned, and differing work responsibilities could pose obstacles to class and collective certification.

Lastly, Plaintiff recognizes that there is monetary value in not having to spend additional hours on the completion of depositions and motion practice including summary judgment and class certification. In order to substantiate his claims, Plaintiff would have been required to conduct depositions of multiple Bostik management and supervisory employees in addition to the depositions of multiple employees which Defendant identified as witnesses as part of its initial disclosures and in discovery. Plaintiff anticipates that Defendant would have required depositions of any opt-in plaintiff. Scheduling, preparing for and conducting multiple depositions would have required a significant expenditure of resources for both sides. In addition, it appeared likely that disputes would arise regarding both parties' document productions, which would have required more time and expense to resolve.

Like Plaintiff, Defendant also considered the additional expense imposed by continuing to litigate the case. Producing multiple management and supervisory employees and other fact witness for depositions would require significant employee time and potentially disrupt normal

business operations. Given these considerations on both sides, the parties agreed to settle the case during the settlement conference held on November 6, 2023.

## IV.    <u>Proposed Settlement Terms</u>

The proposed Settlement Agreement provides that Defendant will make a non-reversionary Gross Settlement Payment of $175,000. This amount shall include all Individual Settlement Payments, Service Awards, Claims Administrator Costs, Class Counsel Attorneys' Fees and Costs. The proposed settlement amount is a fair, adequate, and reasonable resolution of this claim, given the anticipated costs and delays of continued litigation and motion practice. It is well within the range of potential outcomes for the Plaintiff and the Settlement Class Members, given the potential proof problems in the case.

### A.    <u>Releases</u>

In exchange for receiving payments from the Settlement, the Settlement Class Members will agree to release Defendant from "all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, attorneys' fees, costs and losses resulting from unpaid wages, minimum wages, unpaid overtime, liquidated damages, or other compensation against Defendant that accrued during his work with Defendant …." *See* Settlement Agreement at ¶ 27, attached as Exhibit A to Lechtzin Decl. Upon cashing or depositing his Settlement Award Check, Class Members will be "deemed to have released his FLSA claims." *Id. at* ¶28. The release language included with  each Settlement Award check will state:

> By signing or cashing this check, I affirm my release of Bostik, Inc., and all Releasees of all Settlement Class Members' Released Claims as defined in the Settlement Agreement approved by the Court in *Curry v. Bostik, Inc.,* Case No. 3:22-cv-00370-DJH-CHL (W.D. KY). I affirm that I will not sue or assert any of the Settlement Class Members' Released claims, including FLSA and state law-based claims, against any Releasee.

*Id.* at ¶ 29.

The Named Plaintiff will be subject to a general release which takes effect upon signing the Settlement Agreement. *Id*. at ¶ 26.

## B. <u>Notice</u>

If the Court grants the instant Motion, Defendant will provide Plaintiff's counsel and the Settlement Administrator a Class List with the best available contact information for the Settlement Class Members. *Id*. at ¶ 32. The Settlement Administrator will send the Settlement Notice to all Settlement Class Members within 10 days of receiving the Class List via regular mail and email. *Id*. at ¶ 33. The Settlement Administrator will create a website with the Notice of Settlement and other documents and information related to the litigation. *Id*. at ¶ 36. The Settlement Administrator will also establish a toll-free phone number with information about the Settlement. *Id*. at ¶ 38.

## C. <u>Settlement Award Eligibility</u>

The Settlement Administrator will determine eligibility for and the amount of Settlement Awards to be paid to the Settlement Class Members. *Id*. at ¶ 43. There will be two tiers of payments: (1) a $200 payment to all Settlement Class Members; and (2) a *pro rata* share based on overtime hours worked.[6] *Id*. This structure ensures that Settlement Class Members who did not work overtime hours will still receive a payment through the Settlement as consideration for releasing potential claims, and that Settlement Class Members who did work overtime will receive a payment proportional to the number of overtime hours they worked.

---

[6] Each hour of overtime worked is equal to one settlement share. Settlement awards will be determined using the following formula: "[t]he total number of settlement shares for all Settlement Class Members will be added together and the resulting sum will be divided into the remaining Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Settlement Class Member's number of settlement shares to determine the Settlement Class Member's Settlement Award." *Id*.

This Court has approved of similar settlements providing for *pro rata* distribution of funds to ensure that the distribution of the settlement proceeds is equitable. *See, e.g.*, *Cook v. Papa John's Paducah, LLC*, No. 5:20-cv-00129, 2022 WL 301796-TBR, at *4 (W.D. Ky. Feb. 1, 2022).

### D.    Objections and Requests for Exclusions

Settlement Class Members who wish to object to the Settlement must submit an objection in writing prior to the Claim Deadline, signed by the objector, indicating the grounds for objecting, and whether they intend to attend and be heard at the Final Approval Hearing. *Id.* at ¶ 45. To be heard at the Final Approval Hearing, the objector must file notice with the Court, and serve notice on both Plaintiff and Defense counsel. *Id.* To be excluded from the Settlement, a Settlement Class Member must submit a signed, written statement indicating that they do not wish to participate in the Settlement prior to the Notice Deadline. *Id.* at ¶ 46.

### E.    Final Approval Hearing

Thirty days after the Notice Deadline, Plaintiff will request that the Court schedule a Final Approval Hearing seeking that the Court enter an order finding that the Notice met due process requirements and that the Settlement was fair, reasonable and adequate, and directing that the Settlement Funds be distributed, the Action be dismissed with prejudice, and retaining jurisdiction to oversee settlement administration. *Id.* at ¶ 48.

### F.    Distribution of Settlement Funds

#### 1.    *Gross Settlement Funds and Non-Reversion*

Defendant will wire the Gross Settlement Amount to an escrow account within five days after the Effective Date. Class Counsels' attorney's fees, costs and service awards which are approved by the Court will also be paid within five days of the Effective Date. *Id.* at ¶ 49.

The Gross Settlement Fund shall be used to pay, in the following order: (1) all Administrative Costs, (2) any taxes owed by the Gross Settlement Fund (but not any taxes owed by any individual Class Counsel, Plaintiff, or Class Members), (3) any Fee and Expense Award approved by the Court, (4) any Service Awards to the Class Representative approved by the Court, and (4) Settlement Payments approved by the Court, which will be paid within five days of the Effective Date. *Id*. at ¶ 50. There will be no reversion of any portion of the Gross Settlement Amount to the Defendant after the Effective Date. *Id*. at ¶ 49.

### 2.  *Service Award*

Subject to the Court's Final Approval Order, Plaintiff Curry will receive Three Thousand Dollars ($3,000) as a service award for his efforts in prosecuting the case. *Id*. at ¶ 51. Plaintiff Curry has earned a service award. He originated this case and worked diligently with Class Counsel to prosecute the matter. This involved multiple extended phone calls with Class Counsel prior to filing the Complaint wherein Plaintiff Curry described his duties, his compensation, and his interactions with Defendant's managers regarding his compensation.

Plaintiff Curry was extremely responsive to Class Counsel's inquires, often taking calls and responding to emails during evenings and weekends. He also provided valuable strategic insight and showed a genuine curiosity and interest in the legal process. Plaintiff Curry fully responded to Defendant's interrogatories and requests for documents and was willing to sit for a deposition. He also attended the settlement conference via Zoom, and promptly responded to all of Class Counsels' communications regarding settlement negotiations. In short, Plaintiff Curry has been a model Class Representative, and it can truly be said that this case would not exist were it not for his efforts.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cook*, 2022 WL 301796, at *4 (internal citations and quotations omitted). The Sixth Circuit has used the following factors to determine whether incentive awards are appropriate:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members;
> (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

*Id.*

### 3. *Attorneys' Fees and Costs*

Subject to the Court's Final Approval Order, Class Counsel will receive an award of attorneys' fees in an amount of one-third (1/3) of the Gross Settlement Amount ($58,275), which will compensate Class Counsel for all work performed in the Action. Also subject to the Court's Final Approval Order, Class Counsel will be reimbursed for his out-of-pocket costs from the Gross Settlement Amount. *Id.* at ¶ 52. The one-third fee is significantly less than Class Counsel's lodestar. Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Class Counsel will file a motion for approval of attorneys' fees and reimbursement of expenses with its motion for final approval of the Settlement if preliminary approval is granted.

"While attorneys' fees are mandatory in FLSA actions, the court must determine what fee is reasonable. 29 U.S.C. § 216(b). A reasonable fee is that which is 'adequately compensatory to attract competent counsel' but 'avoids producing a windfall for lawyers.'" *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021). "The starting point for determining the reasonable amount of attorneys' fees is the lodestar calculation—the product of the number of hours reasonably spent on the case by an attorney multiplied by a reasonable hourly rate." *Smith*

13

*v. Service Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014). As discussed above Class Counsel's lodestar is higher than the requested fees.

### 4. *Settlement Administrator*

The parties will engage Analytics, LLC as the Settlement Administrator.[7] The Settlement Administrator shall perform all the duties, tasks, and responsibilities associated with providing notice and administering the Settlement. *Id.* at ¶ 56. The Settlement Administrator will sign retainer and confidentiality agreements which will obligate it to maintain the confidentiality of Settlement Class Members' personal identifying information and not to use such information for any purposes other than the administration of this settlement. *Id.* at ¶ 57-62. The Settlement Administrator will provide Class Counsel and Defense Counsel periodic reports regarding requests for exclusions or objections, and reconciliations and accountings of the Gross Settlement Amount at certain pre-set intervals. *Id.* The Settlement Administrator will also be required to destroy all data related to the Settlement twelve (12) months after the Final Report is submitted to the Court. *Id. at* ¶ 62.

## V.    Legal Standards

### A.    The Settlement Satisfies the Standards for Both the FLSA and Fed. R. Civ. P. 23

The Settlement here satisfies the factors for the settlement of a FLSA collective and a Rule 23 class. Courts in the Sixth Circuit conduct FLSA and Rule 23 class certification and settlement approval together. *See, e.g.*, *Thompson v. Seagle Pizza, Inc.*, No. 3:20-cv-16-DJH-RSE, 2022 WL 1431084, at *4 (W.D. Ky. May 5, 2022) ("Class-action settlements and agreements settling FLSA claims both require court approval.); *Love v. Gannett Co., Inc.*, 2021 WL 4352800 (W.D. Ky. Sept. 24, 2021) (same); *Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-cv-703, 2019 WL 5496023, at *2 (W.D. Ky. May 28, 2019) ("As a general rule, employees' claims under the FLSA are non-

---

[7] *See* https://www.analyticsllc.com/ (last accessed November 28, 2023).

waivable and may not be settled without supervision of either the Secretary of Labor or a district court.") (internal citations omitted); *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016) ("[C]ourts in the Sixth Circuit require a settlement agreement under the FLSA to be approved by the court."). The court "first considers whether to conditionally certify the proposed collective and preliminarily certify the proposed Rule 23 class before proceeding to the question of preliminary approval of the agreement itself." *Davis v. Omnicare, Inc.*, No. 5:18-cv-142, 2021 WL 1214501, at *3 (E.D. Ky. Mar. 30, 2021).

**B.   Conditional Certification of the Collective under 29 U.S.C. § 216(b)**

The Court applies the same analysis to settlement agreements in the FLSA context that it does in the Rule 23 context. *See Mitcham*, 2019 WL 5496023, at *2. The polestar is whether a proposed settlement agreement "is a 'fair, reasonable, and adequate' resolution of a bona fide legal dispute." *Id.*; *Thompson v. Seagle Pizza, Inc*., No. 3:20-cv-16-DJH-RSE, 2021 WL 7084148, at *1 (W.D. Ky. June 1, 2021) (granting preliminary approval and conditional class certification); *Burnham v. Papa John's Paducah, LLC*, No. 5:18-cv-112, 2020 WL 2065793, at *1 (W.D. Ky. Apr. 29, 2020) ("the Court must determine whether 'the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'"). Plaintiff requests the Court certify the following collective pursuant 29 U.S.C. § 216(b):

> All current and former non-exempt employees who worked in the production areas at the Louisville Plant and were required to wear PPE, and who were Defendants' employee between June 21, 2019, through the date of the Preliminary Approval Order (the "FLSA Collective").

"Courts should approve joint settlement agreements of FLSA claims 'if a proposed settlement reflects a reasonable compromise over contested issues.'" *Davis*, 2021 WL 1214501, at *4. The standard for approval is "relatively forgiving" and should reflect "the uncertainty of the litigation process" and legal and "factual disagreements." *Id.* "Section 216(b) of the FLSA 'allows

similarly situated employees to recover compensation from their employer in 'opt-in' class action litigation.'" *Thompson*, 2022 WL 1431084, at *3. "Plaintiffs can satisfy this 'similarly situated' requirement 'by showing they suffer[ed] from a single FLSA-violating policy, and when proof of that policy ... proves a violation to all plaintiffs.'" *Id.*

Here, each member of the proposed collective is subject to the same policies that each member is required to dress in their PPE and attend a pre-shift meeting prior to their shift start time, for which they were not paid. Additionally, each person's membership in the collective hinges on "knowable and demonstrable characteristics" in that, Bostik's employment records will be utilized to identify class members. *See Davis*, 2021 WL 1214501, at *5.

Thus, the proposed collective's definition is "sufficiently definite" to demonstrate that each member of the proposed collective is "similarly situated." *Davis*, 2021 WL 1214501, at *3. Additionally, the settlement resolves a bona fide dispute in that Bostik, while agreeing to the settlement, has denied any liability for Plaintiff's FLSA claims. Additionally, Bostik contests whether each potential collective member is "similarly situated" to Plaintiff and whether it is subject to the three-year lookback period. Even assuming, *arguendo*, that Bostik did not deny liability, there remain significant issues regarding when, in the donning and doffing process, an employee transitions from not working to working "requiring fact-intensive" testimony regarding "who was or was not paid, for what hours, why and when." *See, e.g.*, *Bernardez v. Firstsource Sols. USA, LLC*, No. 3:17-cv-613, 2019 WL 4345986, at *5 (W.D. Ky. Sept. 12, 2019).

Plaintiff submits that the Court should conditionally certify the proposed collective for settlement purposes.

The other factors the Court must consider before preliminarily approving this settlement are "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the

litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *See Thompson*, 2022 WL 1431084, at *4. "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Mitcham*, 2019 WL 5496023, at *2 (internal citations omitted).

"Absent evidence of fraud or collusion, the Court may presume none exists." *Love*, 2021 WL 4352800, at *2; *Burnham*, 2020 WL 2065793, at *2; *Ross*, 2016 WL 7320890, at *3). As above, the Parties resolved this claim after a day-long settlement conference presided over by Magistrate Judge Colin H. Lindsay.

Since the Court has not, as yet, ruled on Plaintiff's Motion for Conditional Certification, Dkt. No. 35, the parties will be required to engage in extensive further litigation in order to prepare this matter for trial. Therefore, there is no doubt that "continuing to litigate this case would result in greater expense for both parties and increase the duration of the litigation." *Love*, 2021 WL 4352800, at *2. Here, the parties have engaged in sufficient investigation and discovery to ensure that the "issues are well understood by both sides." *Id.* Plaintiff submits that the Court should find the first three additional factors are satisfied.

The "most important of the factors to be considered in reviewing a [class-action] settlement is the probability of success on the merits." *Thompson*, 2022 WL 1431084, at *7 (internal citations omitted). Plaintiff, and the Settlement Class face significant risks as to Bostik's liability and the amount of possible damages that could be recovered at trial. The settlement amount is fair to Plaintiff and other settlement class members because "[r]ather than facing the prospect of costly

litigation and no recovery, the class members in this case will instead 'obtain the immediate and certain benefit of a cash settlement.'" *Id.*

Further, Plaintiff, on behalf of the collective and class, along with class counsel support the settlement. *See Love*, 2021 WL 4352800, at *2. Since no notice of this action has been provided, the sixth factor is irrelevant. *Id.* The last factor favors preliminary approval since "the agreement promotes the 'strong public interest in encouraging settlement' because it 'reflects a reasonable compromise over issues actually disputed.'" *See Love*, 2021 WL 4352800, at *3.

Accordingly, the Court should find the factors for preliminary approval of the FLSA settlement are satisfied.

### C.  Class Certification under Fed. R. Civ. P. 23

Rule 23 of the Federal Rules of Civil Procedure governs traditional class actions, or "opt-out" class actions. The Supreme Court has noted that the drafters of Rule 23 intended class actions to vindicate the rights of a group of injured persons who otherwise would be without sufficient strength or inclination to bring suit on an individual basis. *See Amchem Prods. Inc. v. Windsor*, 512 U.S. 591 (1997). Before granting final approval of a class action settlement, courts must consider whether the proposed settlement class satisfies the requirements enumerated in Fed. R. Civ. P. 23. *See Davis*, 2021 WL 4188053, at *4. Class actions may be settled only with court approval. Fed. R. Civ. P. 23(e). Approval of a settlement involves two-stages: (1) "The judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing"; and (2) "If so, the final decision on approval is made after the hearing." *Ann. Manual Complex Lit.* (Fourth) § 13.14 (2019); *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009). Courts have broad discretion in deciding whether to certify a class action under Rule 23. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979). In evaluating

the appropriateness of class certification, the Court should not consider the factual merits of the case or the strengths or weaknesses of the underlying claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 158 (1974). Once a court is satisfied that the requirements of Rule 23 are met, class certification is a matter of right. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 403 (1980).

To obtain class certification under Rule 23, Plaintiff must prove the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See Davis*, 2021 WL 4188053, at *5. For numerosity, "no strict numerical test exists." *Id.* (citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir.2012). "A class of 35 can clear the hurdle." *Davis*, 2021 WL 4188053, at *5 (citing *Young*, 693 F.3d at 542). Here, the potential class size is between 35 and 40 individuals and satisfies the numerosity requirement.

Under Fed. R. Civ. P. 23(a)(2) and (3) the commonality and typicality factors require Plaintiff to show "questions of law or fact common to the class." *Young*, 693 F.3d at 542.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury." *Thompson*, 2021 WL 7084148, at *5. As above, each class member is subject to the same PPE requirements and must attend the pre-shift safety meeting each day and are not compensated for either activity. Likewise, typicality is satisfied because each class member's claim "'arises from the same event or practice or course of conduct that gives rise to the claims of other class members,' and 'the plaintiff's claims' are based on the same legal theory.'" *Id. See also Doster v. Kendall*, 54 F.4th 398, 438 (6th Cir. 2022) (observing that commonality and typicality "tend to merge" in a case like this one.")

To satisfy the adequacy requirement, Plaintiff must "have common interests with unnamed members of the class, and it must appear that the representatives will vigorously prosecute the

interests of the class through qualified counsel. *Davis*, 2021 WL 4188053, at *6. *See also Young*, 693 F.3d at 543 (a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Plaintiff Curry's interests as aligned with those of the other class members in that he is seeking compensation for pre- and post-shift time expended donning and doffing his PPE and for time spent attending the pre-shift safety meeting. Additionally, through his counsel, he has diligently pursued the class' claims. Additionally, class counsel has considerable experience litigating complex wage and hour disputes in Kentucky and across the country. *See* Lechtzin Decl.  ¶¶ 2, 20, 23.

Once Plaintiff demonstrates that the Rule 23 (a) requirements are satisfied, "the class must satisfy one of the categories of Rule 23(b)." *Young*, 693 F.3d at 544. A "plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Id.*

Here, the issue of whether Bostik's time keeping policies unlawfully deprived class members of their wages predominates over any individual issues. *See, e.g., Thompson*, 2021 WL 7084148, at *6 (the issue of whether the defendants' reimbursement policies unlawfully deprived class members of their wages predominates over any individual issues."); *Davis*, 2021 WL 4188053, at *6 ("class members' claims arise from common questions of law and fact regarding defendants' policy of employer/independent contractor designation.")

Plaintiff and the Settlement Class meet the "predominance" requirement of Fed. R. Civ. P. 23(b)(3) because each class members' claim relies on the same policies that deprived Plaintiff Curry of his pay. "[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young*, 693 F.3d at 545. "While the amount of damages incurred by each proposed class member may be individualized, the significant and common issue of defendants'

alleged violations outweighs any issues relating to each proposed class member's individual damages." *Thompson*, 2021 WL 7084148, at \*6. Therefore, there are no individual issues that would predominate over the issues common to Plaintiff and the Settlement Class Members.

**B.    Certification of the Settlement Class Under Fed. R. Civ. P. 23 is Appropriate**

Plaintiff requests that the Court certify the following class under Rule 23:

All current and former non-exempt employees who worked in the production areas at the Louisville Plant and were required to wear PPE and who were Defendants' employee between June 21, 2017, through the date of the Preliminary Approval Order (the "Kentucky Class").

In order to prove his claims, both the Named Plaintiff and the Settlement Class Members would present evidence that they were not paid for pre- and post-shift time expended donning and doffing their PPE and attending the daily pre-shift safety meeting. Moreover, each Settlement Class Member's losses were a result of Defendant's policy by which they were required to dress in their PPE and attend a pre-shift safety meeting without being paid for their time. As above, the conduct alleged constitutes a violation of the KWHA § 337.285 and 803 Ky. Admin. Regs. 1:060.

While the Settlement Class is small, a class action is still superior to other methods of adjudicating this matter under Fed. R. Civ. P. 23(b)(3). First, having all the Settlement Class Members' claims adjudicated in one lawsuit is far more efficient for the Court and the parties than requiring Settlement Class Members to initiate 40 individual lawsuits. Second, there are no other existing lawsuits by any Settlement Class Members concerning wage and hour issues similar to this litigation. Third, the Western District of Kentucky is the most appropriate forum for this matter since Defendant and most of the Settlement Class Members reside in the Louisville area. Finally, there should be no difficulties in managing the proposed case as a class action since certification is being sought in the context of a settlement.

Because each of the prerequisites for class certification under Fed. R. Civ. P. 23 are met, the Named Plaintiff respectfully requests that the Court certify the Settlement Class.

### D. **Preliminary Approval of the Settlement is Appropriate**

Having addressed the factors required to conditionally certify the proposed collective and preliminarily certify the proposed Rule 23 class, the Court may now proceed to the "question of preliminary approval of the agreement itself." *Davis*, 2021 WL 1214501, at *3. "The Court may approve a settlement only after determining that it is 'fair, reasonable, and adequate.'" Fed. R. Civ. P. 23(e); *Thompson*, 2021 WL 7084148, at *2. "Courts also determine whether the settlement will distribute proceeds equitably and whether those distributions, any service award for the representative plaintiff, and the requested attorneys' fees are reasonable." *Love*, 2021 WL 4352800, at *1. The factors to be considered under Rule 23 (e) include whether:

    (A) the class representatives and class counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and
    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Thompson*, 2022 WL 1431084, at *5.

The Rule 23 (e)(2) factors are not meant "to displace any factor previously relied on by the courts, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Thompson*, 2021 WL 7084148, at *2. Plaintiff has already addressed the Sixth Circuit's seven factor test to determine if the Court should preliminarily approve this settlement. *See* Section V B, *supra*. This discussion incorporates consideration of whether Plaintiff and class counsel have adequately represented the

class, that the settlement has been negotiated at arm's length and that the settlement avoids considerable added litigation complexity, expense and duration. The settlement administrator will ensure that each class member receives notice of the settlement along with that members' share of the settlement proceeds. Accordingly, Plaintiff submits that the settlement proposal satisfies the Rule 23 (e) requirements at (A), (B) and (C)(i),(ii) and (iii). *Id. See also* Settlement Agreement ¶¶ 19, 33-38, 43, 52, 53.

The Settlement Agreement "proposes a comprehensive scheme to identify claimants and provide class members with their checks." *Davis*, 2021 WL 1214501, at *11. *See also Thompson*, 2021 WL 7084148, at *3. *See also* Settlement Agreement ¶¶ 32, 56-62. Plaintiff proposes to distribute the settlement's fund on a *pro rata* basis. *Id. at* ¶43. Last, there are no additional agreements between the parties. *See* Rule 23(e)(3); Lechtzin Decl. ¶ 22.

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116. There is a strong presumption in favor a finding a settlement fair and reasonable. *See Burnham,* 2020 WL 2065793, at *3 ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources. If the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.")(internal citations omitted).

Therefore, Plaintiff respectfully requests that the Court find that the factors are met, and preliminary approve this settlement as fair, adequate and reasonable under the FLSA and Fed. R. Civ. P. 23.

### E.  Notice Provisions

Once this Court grants preliminary approval, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

"To satisfy due process, 'notice to the class [must] be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Thompson*, 2021 WL 7084148, at *6. Notice under Rule 23(c)(2)(B), requires that the notice must include in plain, easily understood language:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The Notice attached at Exhibit "B" satisfies these requirements.

### F.  Conclusion

Plaintiff respectfully request that the Court certify the Settlement Class under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, preliminarily approve the Settlement Agreement, order that Notice of the Settlement be sent to the Settlement Class Members, and set a hearing date for Final Settlement Approval.

Dated: February 14, 2024                          Respectfully submitted,

EDELSON LECHTZIN LLP

By: */s/ Liberato P. Verderame*
Eric Lechtzin (PA ID 62096)
Liberato P. Verderame (PA ID 80279)
411 S. State Street
Suite N-300

Newtown, PA 18940
Telephone: (215) 867-2399
elechtzin@edelson-law.com
lverderame@edelson-law.com

Mark N. Foster
**Law Office of Mark N. Foster, PLLC**
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
Mfoster@MarkNFoster.com

*Attorneys for Plaintiff and the Proposed
Collective and Class*