UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| JOSHUA CURRY, | Plaintiff, |
| v. | Civil Action No. 3:22-cv-370-DJH-CHL |
| BOSTIK, INC. and ARKEMA, INC., | Defendants. |

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joshua Curry filed this putative class and collective action against Defendants Bostik, Inc. and Arkema Inc., alleging violations of the Fair Labor Standards Act (FLSA) and the Kentucky Wages and Hours Act (KWHA). (Docket No. 1) Curry's claims against Arkema were dismissed by agreement early in the litigation. (D.N. 18; D.N. 19) Curry now moves the Court to facilitate notice of a collective action pursuant to the FLSA. (Docket No. 73) Bostik does not oppose the motion. (*See id.*) After careful consideration, the Court will grant the motion in part and deny it in part for the reasons explained below.

**I.**

Bostik operates a facility in Louisville, Kentucky (the Louisville Plant), where it manufactures adhesive products. (D.N. 27, PageID.46 ¶ 30) Curry was employed at the Louisville Plant as a Maintenance Mechanic beginning January 31, 2022, but had resigned by the time Bostik filed its answer on August 26, 2022. (*Id.*, PageID.51 ¶ 19) Curry alleges that he and other similarly situated employees at the Louisville Plant were required to wear personal protective equipment (PPE) and attend pre-shift meetings but were not compensated by Bostik for the time they spent donning the PPE or attending the meetings, in violation of the FLSA and KWHA. (D.N. 1, PageID.3 ¶¶ 8-9, 11-12) Curry also alleges that Bostik violated the KWHA by requiring

employees to work 10-to-12-hour shifts without rest breaks or bona fide meal breaks. (*Id.* ¶ 10, PageID.16 ¶¶ 101-02)

In January 2023, Curry moved to conditionally certify a class and facilitate notice under the FLSA. (D.N. 35) Bostik opposed that motion (D.N. 36), which was then administratively remanded pending the parties' settlement conference with Magistrate Judge Lindsay. (D.N. 44) The settlement conference was successful (D.N. 51), and Curry filed an unopposed motion for preliminary approval of the parties' settlement, certification of the settlement class, and facilitation of notice to the FLSA collective. (D.N. 58) The Court held a preliminary fairness hearing and subsequent telephonic conference, during which it explained that a hybrid FLSA/Rule 23 notice would not be consistent with the FLSA or applicable caselaw. (D.N. 72) Curry accordingly submitted the revised motion and proposed notice now before the Court. (D.N. 73)

Curry requests that the Court facilitate notice of this action to "all production and warehousing technicians who work or have worked for [Bostik] at the Louisville Plant since June 21, 2019." (D.N. 73, PageID.533) He further asks that the Court apply equitable tolling to the statute of limitations for potential opt-in plaintiffs. (*Id.*, PageID.528–30) "[F]or purposes of facilitating the settlement," Bostik does not oppose Curry's motion (*id.*, PageID.516), though it does oppose the request for equitable tolling. (*Id.*, PageID.530) As explained below, the Court concludes that both facilitation of notice and equitable tolling are appropriate here.

## II.

The FLSA permits plaintiffs to "litigate federal minimum-wage and overtime claims on behalf of other 'similarly situated' employees." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023) (quoting 29 U.S.C. § 216(b)). But pursuant to § 216(b), "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to

become such a party and such consent is filed in the court in which such action is brought." Thus, "unlike a Rule 23 class action, an FLSA collective action is not representative—meaning that 'all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action.'" *Clark*, 68 F.4th at 1009 (quoting *Canaday v. Anthem Cos.*, 9 F.4th 392, 402 (6th Cir. 2021)). Potential plaintiffs typically "come to learn about the existence of an FLSA suit" via court-facilitated notice. *Id.* at 1007. In *Clark*, the Sixth Circuit adopted a standard for "the showing . . . that is necessary for a district court to facilitate notice." *Id.*

**A.      Facilitation of Notice**

Under the standard adopted in *Clark*, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves."[1] *Id.* at 1011. This "standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* "Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Id.* at 1010 (citing *Pierce v. Wyndam Resorts, Inc.*, 922 F.3d 741, 745-46 (6th Cir. 2019)). "Whether other employees are subject to individualized defenses—such as an employee's agreement to arbitrate a claim—can also affect whether particular employees are similarly situated for purposes of sending notice." *Id.* (citing *Pierce*, 922 F.3d at 725). Notice may be appropriate even "where the employees' job duties and their titles differed substantially," so long as the named

---

[1] The *Clark* panel expressly rejected "characterization of the notice determination as a 'certification,' conditional or otherwise." 68 F.4th at 1009 (declining to adopt the two-step approach set out in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), "and its lenient standard for 'conditional certification' for purposes of sending notice of an FLSA suit to other employees"). The Court therefore declines to "conditionally certify" a collective here.

3

plaintiff can show that they were "subject to the same general corporate policies." *Marcum v. Lakes Venture, LLC*, No. 3:19-CV-00231-GNS-LLK, 2020 U.S. Dist. LEXIS 219816, at *6–7 (W.D. Ky. Nov. 24, 2020) (citing *Bassett v. Tenn. Valley Auth.*, No. 5:09-CV-39, 2013 U.S. Dist. LEXIS 24890, at *2-9 (W.D. Ky. Feb. 22, 2013)). Ultimately, "[p]laintiffs are similarly situated when their claims are 'unified by common theories of defendants' statutory violations,' such as 'a single, FLSA-violating policy.'" *Gifford v. Northwood Healthcare Grp., LLC*, No. 2:22-CV-4389, 2023 U.S. Dist. LEXIS 146707, at *8 (S.D. Ohio Aug. 21, 2023) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)); *see also Roesel v. Dam Mgmt. LLC*, No. 5:23-cv-01584-JRA, 2025 U.S. Dist. LEXIS 130858, at *7 (N.D. Ohio July 10, 2025) (finding "no question that all of Defendant's servers, bussers and bartenders are tipped employees that are '"unified by common theories of defendants' statutory violations," such as "a single, FLSA-violating policy[,]"' and are therefore similarly situated" (quoting *Gifford*, 2023 U.S. Dist. LEXIS 146707, at *8).

Here, Curry asserts that he and the potential opt-in plaintiffs are similarly situated because they "1) have all worked for Defendant as production and warehousing technicians; and 2) were required to perform work prior to and after their shifts, for which they were not compensated." (D.N. 73, PageID.526) In support, Curry points to Bostik's employee handbook, which provides:

> All employees, including visitors[,] are required to wear necessary PPE where designated. If you're in a production or maintenance-related role, Bostik provides you with an adequate supply of uniforms. . . . Uniforms are for use while on the job, and you're not allowed to remove them from the premises. We pay the cost of laundering and replacement of your uniforms. . . .
>
> Throughout our facilities, a variety of PPE is required, such as safety shoes, lab coat, gloves, hard hats, safety glasses, etc. Many of these items are provided at the facility. Specific procedures are in place in the event that you're required to obtain safety shoes and/or prescription safety glasses.

4

(*Id.*, PageID.518 (emphasis removed) (omission in original) (quoting D.N. 73-4, PageID.573))

The handbook further states:

> If you're a non-exempt employee, you're expected to keep accurate records of your work hours, using the time-keeping system at your facility. All Bostik facilities use a time clock. If you're an hourly employee, you must punch in so that you are ready to begin your work at your scheduled starting time and punch out at or after your scheduled dismissal time. Any deviations require prior approval from your direct leader. Accurate time reporting is essential. Talk to your direct leader for more information.

(*Id.* (emphasis removed) (quoting D.N. 73-4, PageID.572)) Curry also cites Bostik's admission in its answer that "employees in the mixing, blending, packaging machines, equipment maintenance, and shipping and receiving are required to wear [PPE] while performing work." (D.N. 27, PageID.47 ¶ 4; *see* D.N. 73, PageID.517–18) And in a sworn declaration attached to his motion, Curry "describes his work for [Bostik], his shift schedule, the donning and doffing process which he and other production and warehousing technicians followed before and after each shift, and [Bostik]'s compensation policies, including paying the production and warehousing technicians only for the time they spent during the schedule shift hours." (D.N. 73, PageID.527; *see* D.N. 73-3) Timesheets accompanying the declaration support Curry's assertion that his "paid time started at [his] shift start time despite the fact that [he] was already dressed in mandatory PPE and attended a pre-shift turnover meeting." (D.N. 73-3, PageID.543; *see id.*, PageID.546–69) Curry also states that based on his discussions with other Bostik employees, he understands the challenged policies to apply to all technicians in the manufacturing process. (*Id.*, PageID.543–44)

The evidence presented in support of Curry's motion demonstrates that the claims of Curry and the potential opt-in plaintiffs "are 'unified by common theories of [Bostik's] statutory violations.'" *Gifford*, 2023 U.S. Dist. LEXIS 146707, at *8 (quoting *O'Brien*, 575 F.3d at 585). In light of this evidence, and absent any indication that the other Bostik employees are "subject to

individualized defenses," *Clark*, 68 F.4th at 1010, Curry has "show[n] a 'strong likelihood' that those employees are similarly situated to" him for purposes of his FLSA claim. *Id.* at 1011. Facilitation of notice is therefore appropriate. *See id.*

**B.      Equitable Tolling**

Both the concurrence and the dissent in *Clark*—"i.e., a majority of the panel—endorsed the proposition that '[e]quitable considerations support the use of tolling for FLSA collective actions.'" *Cordell v. Sugar Creek Packing Co.*, 691 F. Supp. 3d 838, 849 (S.D. Ohio 2023) (quoting *Clark*, 68 F.4th at 1014 (Bush, J., concurring)); *see also Clark*, 68 F.4th at 1017 (White, J., concurring in part and dissenting in part) (agreeing with Judge Bush that "given the . . . new standard [set out in *Clark*], district courts should freely grant equitable tolling to would-be opt-in plaintiffs"). Judge Bush's concurrence observed that "[i]n situations where court delay has time-barred a sizeable number of potential plaintiffs, many courts find that the delay alone warrants equitable tolling and decline to analyze the typical equitable tolling factors." *Id.* at 1015 (quoting *Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1077 (S.D. Ohio 2019)); *see also Sekala v. Just Mike's Jerky Co.*, No. 1:24 CV 1369, 2025 U.S. Dist. LEXIS 104787, at *11 (N.D. Ohio June 3, 2025) ("Because delay alone warrants equitable tolling, the Court need not analyze the equitable tolling factors." (citing *Clark*, 68 F.4th at 1015 (Bush, J., concurring))).[2] In

---

[2] The court in *Sekala* nevertheless engaged in a detailed analysis because "[e]ach party set[] forth its respective position" regarding the applicability of equitable tolling—specifically, whether it was premature to grant equitable tolling before opt-in plaintiffs joined the action. 2025 U.S. Dist. LEXIS 104787, at *6; *see id.* at *6–16. Here, in contrast, Bostik did not file a response setting out the basis for its opposition; instead, Curry's motion merely notes at the close of the equitable-tolling discussion that "[t]he Parties have met and conferred and Defendant[] oppose[s] Plaintiffs' request." (D.N. 73, PageID.530) Given the lack of substantive opposition and the ample authority supporting equitable tolling under similar circumstances, additional analysis is unnecessary. *See Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)).

this case, the delay in facilitation of notice to potential opt-in plaintiffs—largely beyond Curry's control—has likely "time-barred a sizeable number of potential plaintiffs."[3]  *Clark*, 68 F.4th at 1015 (Bush, J., concurring) (quoting *Betts*, 351 F. Supp. 3d at 1077).  Equitable tolling is therefore appropriate.  *See id.*; *Sekala*, U.S. Dist. LEXIS 104787, at *11.

**C.     Proposed Notice and Consent Form**

The proposed notice, which Curry seeks leave to send via U.S. Mail and email, provides the case name and number; describes the claims, Bostik's position, and who is eligible to join the collective action; notifies potential opt-in plaintiffs of their right to join the action, how to do so, and the consequences of doing so (or not); notes the Court's neutrality; advises that the parties have reached a proposed settlement that has yet to be approved; explains that opt-in plaintiffs will not be responsible for attorney fees; and gives potential opt-in plaintiffs forty-five days to submit the attached consent form.  (D.N. 73-1)  Curry requests that he also be permitted to send a reminder notice fifteen days before the opt-in deadline.  (D.N. 73, PageID.532)

"A forty-five-day deadline is sufficient and reasonable."  *Gifford*, 2023 U.S. Dist. LEXIS 146707, at *14 (citing *Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-CV-00983, 2013 U.S. Dist. LEXIS 49105, 2013 WL 1386026, at *6 n.3 (S.D. Ohio Apr. 4, 2013)).  And sending notice by both U.S. Mail and email is generally accepted in this circuit as the preferred way "to ensure that putative class members receive notice of the pending action."  *Id.* (quoting *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 899-900 (S.D. Ohio 2018)); *see also, e.g.*, *Hall v. Gannett Co.*, No. 3:19-cv-296-BJB-RSE, 2021 U.S. Dist. LEXIS 12216, at *14-15 (W.D. Ky. Jan.

---

[3] Curry argues—and Bostik apparently does not dispute—that the three-year statute of limitations for willful FLSA violations should apply at the notice stage.  (D.N. 73, PageID.526)  This approach is likewise supported by ample authority.  *See, e.g.*, *Smith v. Generations Healthcare Servs. LLC*, No. 2:16-CV-807, 2017 U.S. Dist. LEXIS 106583, at *16 (S.D. Ohio July 11, 2017) (citations omitted).

22, 2021) ("Because district courts routinely allow notice to be transmitted via U.S. mail and email, the Court will not restrict those methods." (citations omitted)). A reminder notice, however, is "unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit." *Hall*, 2021 U.S. Dist. LEXIS 12216, at *18-19 (quoting *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010)). It thus risks running afoul of the Supreme Court's admonition "that [a] court's facilitation of notice must not 'in form or function' resemble 'the solicitation of claims.'" *Doe v. Coliseum, Inc.*, No. 2:20-CV-10845-TGB-MJH, 2024 U.S. Dist. LEXIS 179053, at *19 (E.D. Mich. Sept. 30, 2024) (quoting *Clark*, 68 F.4th at 1010); *see Hoffman-La Roche v. Sperling*, 493 U.S. 165, 174 (1989) ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.").

The proposed notice and consent form are also deficient in that they do not advise potential opt-in plaintiffs of "the right to select counsel of [their] own choosing." *Canaday*, 9 F.4th at 403 (alteration in original) (quoting *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1073 (S.D. Ohio 2016)) ("With this option of separate counsel, collective actions permit individualized claims and individualized defenses, 'in which aggrieved workers act as a collective of individual plaintiffs with individual cases.'" (citation omitted)). On the contrary, Curry's proposed consent form requires opt-in plaintiffs to "designate Plaintiff['s] Counsel . . . to represent [them] for all purposes in this action" and "designate the named plaintiff . . . as [their] agent to make decisions on [their] behalf concerning the litigation." (D.N. 73-2, PageID.539) "Informing [p]otential [p]laintiffs of their right to select their own counsel is not only 'an appropriate element' of a notice, but failure to inform [p]otential [p]laintiffs of that right risks seriously eroding it." *Gifford*, 2023

8

U.S. Dist. LEXIS 146707, at *15 (quoting *Heaps v. Safelite Sols., LLC*, No. 2:10 CV 729, 2011 U.S. Dist. LEXIS 40089, 2011 WL 1325207, at *8-9 (S.D. Ohio Apr. 1, 2011)).  The proposed notice and consent form must be modified accordingly.

Finally, to the extent Curry seeks the telephone numbers of potential opt-in plaintiffs (D.N. 73, PageID.531), his motion will be denied.  Phone numbers are unnecessary for sending notice via mail and email.  The request for telephone numbers thus "is duplicative and unnecessarily intrusive to the privacy rights of [Bostik]'s employees at this juncture."  *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 U.S. Dist. LEXIS 164312, at *34 (S.D. Ohio Sept. 25, 2019) (collecting cases); *see also Hall*, 2021 U.S. Dist. LEXIS 12216, at *15.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Curry's renewed unopposed motion to facilitate notice (D.N. 73) is **GRANTED** insofar as Curry seeks a determination that he has shown a strong likelihood that he and the potential opt-in plaintiffs are similarly situated.  The motion is **DENIED** without prejudice to the extent it seeks approval of the proposed notice and opt-in form.

(2)     Within **ten (10) days** of entry of this Order, the parties shall jointly submit a revised proposed notice and opt-in form reflecting the modifications outlined above.  The Court will facilitate notice upon submission of the corrected documents.

(3)     The three-year statute of limitations is **TOLLED** as to potential opt-in plaintiffs.

(4)     The previously remanded motion to certify (D.N. 35) and motion for preliminary approval (D.N. 58) are **DENIED** without prejudice as moot.

July 21, 2025

David J. Hale, Judge
United States District Court